WILLIAMS *v.* MAC SIM BAR PAPER CO.

AUTOMOBILES—GREAT WEIGHT OF THE EVIDENCE—EQUALLY DIVIDED COURT.
In motorist's action for damages for personal injuries and property damage sustained when his car collided with defendant's truck and trailer, verdict and judgment for plaintiff is affirmed, the court being equally divided as to whether or not the verdict was against the great weight of the evidence.

Appeal from Allegan; Miles (Fred T.), J. Submitted October 11, 1940. (Docket No. 58, Calendar No. 41,284.) Decided January 6, 1941. Rehearing denied April 11, 1941.

Case by F. A. Williams against Mac Sim Bar Paper Company, a corporation, for damages resulting from a collision between plaintiff's automobile and defendant's truck. Verdict and judgment for plaintiff. Defendant appeals. Affirmed by equally divided court.

*Robinson & Lynch,* for plaintiff.

*Howard, Howard & Howard,* for defendant.

McALLISTER, J.  It is sought to reverse the judgment entered on the verdict of a jury in favor of plaintiff on the ground that it is against the weight of the evidence.  The chief ground urged for such contention is that the weight of the evidence shows, from the testimony of numerous disinterested witnesses, that the accident occurred by reason of the fact that plaintiff's automobile was driven over the center line of the road to his left, and collided with the trailer of the truck while it was proceeding on its own side of the highway.  The proposition, therefore, resolves itself into whether the clear weight of the evidence shows that, at the point of collision, plaintiff's automobile was on the wrong side of the road.

Mr. Hourigan, defendant's driver, testified that he first saw plaintiff when he was about 75 feet from him; that defendant at the time was entering the curve, and that the truck continued to come through the curve; that he put his brakes on after plaintiff struck the trailer, and that the trailer was on its right-hand side of the road at the time of the collision.  Hourigan did not testify that he saw the collision.  Mr. Gilson who was riding with defendant's driver at the time of the accident did not see the collision.  It occurred at the extreme end of the trailer, about 33 feet back of where the driver was sitting.  The witness stated that they were on the curve and that the truck and trailer, in the direction in which they were proceeding, were on the right-hand side of the road.  He further testified the truck proceeded ahead about a hundred feet, after the accident, until it was stopped.  Both Hourigan and

Gilson testified that plaintiff drove to his left over the middle line of the road, and back to his right before the accident.

Plaintiff's claim was that when he first saw defendant's truck and trailer it was cutting the curve; that the truck was on its proper side of the road, but the trailer was three or four feet across the center line, on plaintiff's side of the road; that after the accident, plaintiff lost control of his car and finally stopped with one end of his car on the right-hand side of the road and the other on the left.

If we were to consider the case on the testimony of these three witnesses it would be conceded, I feel, that the evidence presented a question of fact, and that a verdict for plaintiff could not be said to be against the weight of the evidence.

However, there were four other witnesses who testified on behalf of defendant with regard to the physical facts. Can this testimony, considered with that of Hourigan and Gilson, be said to result in a clear ponderance of the evidence in favor of defendant's claim? If not, the judgment entered on the verdict should be sustained.

John Brown was about 300 feet from the accident when he heard the collision. He went back and saw the tracks of plaintiff's car "leave the right lane and went across the center and run on the left lane, and back to the right again, and then straddle the center line." This testimony, in itself, does not dispute plaintiff's claim, if it be considered that these tracks were those of plaintiff's car after the collision. He further testified that these "tracks left the right lane and crossed clear over beyond the center line on the left lane, and then back over on the right lane and halfway over the center line, *that is where it stopped, where it smashed up.*" The only reasonable conclusion to be drawn from

the foregoing is that the witness thought the place of the collision was where plaintiff's car stopped. This is contrary to the testimony of the plaintiff, as well as that of defendant's driver and the man who was driving with him. The witness, however, testified:

"I was able to see the point of the accident from where I was. I saw it, after I heard the noise I looked down there. I looked at the tracks of the tractor to see whether it had been on its own right side; they were straight, the outside set of wheels was on the shoulder. I did not follow them back to the point of the collision, that is where I looked at them, right at the collision. The tracks were straight, they didn't zigzag. They weren't over the center line. He was half way off the cement."

But was this witness able to see the point of the accident from where he was, and did he see the place where the collision occurred? He testified as to the place of the collision as follows:

"Where the accident was there was no curve, it is further east. The truck hadn't reached the curve. As to whether the other car had passed through the curve, I didn't see the car. I heard it hit. At the point of the accident, I saw the car where it came to rest, that was out of the curve on the straight of way. The truck hadn't reached the curve, but the other automobile had been through the curve."

In the above testimony he is contradicted by both plaintiff and the defendant's driver, as well as the man who was sitting in the seat with the driver. Their testimony is in agreement that the collision occurred *on the curve.* Under these circumstances the testimony of Brown is of little weight, for it discloses that he did not know where the collision took place. Another witness for the defendant, Mr. Strempki, testified that when he heard the collision,

he came out of his place and saw the truck standing on the right side of the road; that it was standing right where the accident happened,—100 feet from the curve. This is contrary to the testimony of defendant's witness, Gilson, who stated that the truck was driven 100 feet from the scene of the collision before it stopped; and it is also contrary to the testimony of Gilson and defendant's driver, as well as the plaintiff, that the collision occurred on the curve. Such evidence is not persuasive as to where the accident took place.

Mr. Breed, another witness for the defendant, testified that he did not see the crash, but came out of his house and found the truck pulling off the road on its right-hand side; that he determined that the accident happened about 40 feet away from this point, and that the collision occurred 100 feet west of the curve, and "about a foot and a half further west from where" plaintiff's car stood after the collision. His testimony, it can also be said, was contrary to that of defendant's driver and the plaintiff.

George Strong, a State police trooper, testified that he reported to the scene of the accident. He stated:

"For our information we located a spot where the contact should have—or within approximately two or three feet, you can locate where the point of contact was. The distance the truck was from the car and from what we could—information we could get from the drivers of both cars."

He further stated that the tracks made by the vehicles were wiped out when he arrived; and that the accident occurred 75 or 100 feet west of the curve. Chester Emmons, another State trooper who accompanied Strong, testified largely of "estimations" he and Strong had made, and fixed the point

of the accident from information he gathered at the
scene of the accident, and also because he felt that
the place of the accident was where he found a mark
of "dirt" on the highway, which he assumed had
come from plaintiff's car at the point of impact; that
in his opinion, the truck had not yet arrived at the
curve at the time of the collision.

All of the testimony of these last five witnesses
could not be said to result in a clear preponderance
of the evidence in defendant's favor. The important
point was where the collision occurred. None of
them saw the collision. Their testimony on the point
in question directly contradicted that of the de-
fendant's driver and the assistant driver who was
with him at the time, as well as that of plaintiff.
An examination of the record discloses that they
knew nothing whatever with regard to the vital issue
in the case. Under these circumstances, a verdict
in favor of plaintiff cannot be said to be against
the weight of the evidence.

Error is assigned by defendant that the trial
court erred in permitting a medical witness to testify
with regard to plaintiff's injury because he based
his testimony on what had been told him about the
case. It cannot be said that the testimony was
based on hearsay. The witness in question only took
into consideration facts, as stated in a hypothetical
question, in giving his opinion on this phase of the
case. In this there was no error.

The judgment is affirmed, with costs to plaintiff.

BUSHNELL, CHANDLER, and NORTH, JJ., concurred
with McALLISTER, J.

SHARPE, C. J.  December 30, 1938, at about 5:30
p.m., plaintiff, a minister of the gospel, was operat-
ing his automobile on US-12 in a westerly direction

towards Benton Harbor and defendant's tractor and trailer was traveling in an easterly direction on the same road. Plaintiff had left Detroit in the forenoon of that day. The road was slippery and wet. Some snow was banked along the roadside to a depth of approximately four inches. A collision occurred between these two vehicles at a point about 300 feet east of the intersection of US-12 and the Niles-Watervliet road. Plaintiff's car was damaged and plaintiff suffered personal injuries. Plaintiff brought suit. The cause was tried, resulting in a verdict for plaintiff in the amount of $1,592, but by order of the court a new trial was granted unless plaintiff filed a remittitur of all in excess of $1,200. The remittitur was filed and judgment entered in favor of plaintiff in the sum of $1,200.

Defendant appeals and contends that the trial court was in error in denying his motion for a directed verdict on the ground that plaintiff was guilty of contributory negligence. First, we shall examine the correctness of the trial court's ruling upon this motion.

Citation of authority is unnecessary to sustain the principle that on such motions the evidence of plaintiff must be accepted in its most favorable light. Plaintiff testified that as he reached the crest of a hill on highway US-12 he saw defendant's tractor and trailer approaching from the west and about 100 feet away; that when he was about 50 feet from defendant's vehicle, he first saw that it was over on plaintiff's side of the road, it was "cutting the curve;" that he (plaintiff) did everything he could to avoid a collision; that he went off the highway to his right and into the snow, but was unable to avoid a collision owing to the fact that defendant's tractor and trailer occupied too much of plaintiff's portion of the highway.

In *Frary* v. *Grand Rapids Taxicab Co.,* 227 Mich. 445, we said:

"In cases of this character it should be made very plain by the proofs that the conduct of the plaintiff was negligent before his conduct is declared to be negligent as a matter of law."

And in *Flynn* v. *Kramer,* 271 Mich. 500, 505, we said:

"It is an impossibility to lay down precise rules by which we may measure all acts of contributory negligence."

We cannot say as a matter of law that plaintiff was guilty of contributory negligence. There was some evidence produced by plaintiff which, if true, made the question one for a jury to determine.

Defendant next urges that the trial court erred in failing to grant the motion for a new trial on the ground that the verdict was against the great weight of the evidence and for the further reason that the testimony of a physician, who examined plaintiff for the purpose of testifying at the trial and not for treatment, was admitted in evidence.

Defendant contends that the collision occurred within the city limits of Watervliet; that near the eastern limits of the city US-12 descends into a valley; that the physical condition of the road was such that plaintiff could not see into the valley until he reached the crest of the hill; that defendant's truck was proceeding at a slow rate of speed; that plaintiff lost control of his car and zigzagged from side to side; and that at the time of the collision, defendant's truck was on its right side of the highway and had not as yet reached the curve.

Dale Hourigan, the driver of the truck and witness for the defendant, testified that at the time of the collision his truck was traveling at the rate of

15 miles per hour; that the entire outfit was to the right of the center line of the pavement; that as he was going down the grade, plaintiff's car was coming down the other grade; that plaintiff's car dropped off the northerly edge of the pavement, then came back on the pavement and began sliding back and forth; that the trailer was hit in the left rear trailer wheels; and that at the time of the collision, defendant was coming through the curve.

Laurence Gilson, a helper to Mr. Hourigan and a witness produced by the defendant, testified that he was on the truck at the time of the collision; that the paved portion of the highway was 20 feet wide; that the truck stopped at the stop light 400 feet west from the place where the collision occurred; that the truck was traveling at the rate of 15 miles per hour and plaintiff was traveling at the rate of 30 miles per hour; that plaintiff shot off to his right of the highway and then came quickly to the left, then went over to his right and back to his left; that when plaintiff crossed the center line of the highway a second time, the collision occurred; and that at the time of the collision, the tractor and trailer were on its proper side of the highway on the curve.

John Brown, an employee of the State highway department and witness for the defendant, testified that he was 300 feet from the place where the collision occurred; that he heard the cars come together; that the truck hadn't reached the curve; that the tracks made by plaintiff's car left the right lane and went across the center and on the left lane and back to the right again, then straddle the center line; and that the trailer did not cross the center line of the highway.

Ignatious Strempki, a blacksmith and a witness produced by the defendant, testified that he lives

about 50 feet from the point where the collision occurred; that on the day in question, there was some snow on the side of the road and the sidewalk; that he heard the crash and saw the truck standing on its proper side in the highway; that the tracks made by plaintiff's car were plainly visible, were about 25 feet long, and were like a snake, went to the sidewalk and from the sidewalk ran straight to the car; and that it was 100 feet west from the curve to the accident.

Frank Breed, an electrician and a witness for the defendant, testified that he is a resident of Watervliet; that he heard the crash and saw the truck on its proper side of the highway; that the curve in the highway is about 100 feet east from where the collision occurred; and that the tracks made by the truck and trailer were on the south side of the center line of the highway.

George Strong, a member of the State police and a witness produced by the defendant, testified that it appeared that the accident happened about 75 to 100 feet west of the curve; and that plaintiff's car had passed through the curve.

Chester Emmons, a member of the State police, testified that he arrived after the accident happened; that he located the point where the collision occurred; and that it was approximately 75 feet west of the curve.

Opposed to this testimony is the testimony of plaintiff who testified that the collision occurred while the truck was rounding the curve and that, while doing so, crossed the center line of the highway.

On the question of whether a new trial should be granted, we have in mind, as was said in *Brown* v. *Railroad Co.,* 183 Mich. 574, 585, ''While the mere number of witnesses contradicting plaintiff's testi-

mony is not conclusive, yet it is a fact which should not be lost sight of.''

In *Patterson* v. *Thatcher,* 273 Mich. 597, we said:

''The jury weighs the evidence, it is true, but upon review, under the allegation that the verdict rendered is against the weight of the evidence, we examine the record and determine whether the verdict is so contrary to the great weight of the evidence as to disclose an unwarranted finding. We may disagree with the finding but such alone is not the test for our finding must be an apparent disregard by the jury of due consideration of the evidence as a whole.''

In *Crippen* v. *Chatterton,* 228 Mich. 532, we held that evidence sufficient to take the case to the jury is not the test. In the case at bar, the testimony of disinterested witnesses is that the tracks of the tractor and trailer were at all times on the right or south side of the highway. Their testimony as to the position of the vehicles at the time of the collision is so contrary to the testimony of plaintiff that we are constrained to hold that the verdict is against the great weight of the evidence; and that a new trial should be granted.

The judgment should be reversed and a new trial granted, with costs to defendant.

BOYLES, WIEST, and BUTZEL, JJ. concurred with SHARPE, C. J.